

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 JUL 21 P 3:33

CLERK'S OFFICE
AT

BY_____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

Rod J. Rosenstein
United States Attorney

Rachel Miller Yasser
Assistant United States Attorney

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4922*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*
*TTY/TDD: 410-962-4462*

March 28, 2010

William C. Brennan, Jr.
Brennan Sullivan & McKenna LLP
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770
Office: 301.474.0044
Fax:  301.474.5730

Re:    *Plea Agreement in the Matter of United States v. Edward Crossland*

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **April 2, 2010,** it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.    The Defendant agrees to waive indictment and plead guilty to a Criminal Information which will charge him with Mail Fraud, in violation of 18 U.S.C. Section 1341. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Revised 11/5/09

Mail Fraud

(1)     A scheme to defraud;

(2)     The Defendant's knowing and wilful participation in this scheme with the intent to defraud and to obtain money or property by means of false or fraudulent pretenses;

(3)     The use of the United States mail in furtherance of this scheme.

Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows:  a term of imprisonment of 20 years, a term of supervised release of three years, and a fine of $250,000.  In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

Waiver of Rights

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

        a.     If the Defendant had not waived indictment and if he had chosen to plead not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

## Advisory Sentencing Guidelines Apply

        5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

        6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt,

and to the following applicable sentencing guidelines factors:

    a.    The Base Offense Level is **7**, pursuant to U.S.S.G. §2B1.1(a)(1).

    b.    Because the loss is more than $5,000, the offense level is increased by **2** levels pursuant to U.S.S.G. §2B1.1(b)(1)(C), resulting in an adjusted offense level of **9.**

    c.    Because the offense involved the possession of an authentication feature, the offense level is increased by **2** levels pursuant to U.S.S.G. §2B1.1(b)(10)(A)(ii), resulting in an adjusted offense level of **11**.

    d.    Because the Defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense, the offense is increased by **2** levels pursuant to U.S.S.G. §3B1.3, resulting in an adjusted offense level of **13**.

    e.    This Office does not oppose a two-level reduction in the Defendant's adjusted offense level for Count One, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

Thus, the adjusted offense level for Count One is **11.**

7.    The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8.    This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Restitution

9.      The Defendant agrees to the entry of a Restitution Order in the full amount of the victim's losses.  The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury,  all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Surrender of License to Practice Law

10.     The Defendant agrees to surrender his license to practice law in the State of Maryland.

## Obligations of the United States Attorney's Office

11.     At the time of sentencing, this Office will recommend a sentence within the Advisory Guidelines Range.

12.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

13.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a)      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any

term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds **14** months' imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below **8** months' imprisonment.

c)      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d)      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

14.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

15.      The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this

Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

16.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:_____
Rachel M. Yasser
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement,  and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/21/10
_____            _____
Date                                                        Edward Crossland

I am Mr. Crossland's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

07/2/10
_____            _____
Date                                                        William C. Brennan, Esq.

## ATTACHMENT A
### STIPULATION OF FACTS

**The defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.**

The defendant, Edward Crossland ("CROSSLAND"), is a 40-year old estates and trusts attorney who resides in Cumberland, Maryland.

On or about April 13, 2008, CROSSLAND was retained as the attorney for the estate of "RK." RK passed away on April 11, 2008, leaving behind an estate worth approximately $1.6 million. On or about April 14, CROSSLAND visited the deceased's home and took a stack of RK's credit cards into his possession, informing relatives of the deceased that he would keep the cards "for safekeeping, so they don't get in the wrong hands."

These credit cards included RK's American Express account ****-******-*2001 and RK's Citibank/Sears account ****-****-****-*636.

On April 21, 2008, CROSSLAND accessed the website belonging to American Express and falsely represented himself to be RK by using an authentication feature belonging to RK (namely, his Social Security number). CROSSLAND did so for the purpose of adding himself as an "authorized user" on RK's American Express credit card, account number ****-******-*2001. CROSSLAND also changed the address associated with RK's account to CROSSLAND's law firm address. A new card was sent to CROSSLAND via the U.S. Mail at that address, bearing CROSSLAND's name and RK's American Express account number.

Between May 1, 2008 and June 30, 2008 CROSSLAND charged $5,991.42 on RK's American Express credit account ****-******-*2001 for his own personal use. These purchases include airline tickets, car rentals, and hotel reservations outside of Maryland. CROSSLAND also made a minimal payment on the account in order to avoid detection and continue fraudulently using RK's credit. The credit limit on the victim's American Express credit account was $15,000.

CROSSLAND also called Citibank on April 21, 2008, represented himself to be RK, and attempted to add himself as an authorized user on RK's Citibank/Sears Mastercard, account number ****-****-****-*636. CROSSLAND again changed the address associated with RK's Citibank account to CROSSLAND's firm address, and CROSSLAND was successfully added as an authorized user on RK's Citibank credit account. The credit limit on the victim's Citibank Sears card was $22,200; however, CROSSLAND did not make any charges on the victim's Citibank Sears card.

The total loss associated with CROSSLAND's scheme to defraud financial institutions by adding himself as an authorized user on his deceased client's credit accounts was over $5,000. In order to accomplish his scheme to defraud, CROSSLAND abused his position of private trust as an attorney for the estate of the deceased victim, RK. This abuse of trust significantly facilitated both the commission and concealment of the offense.


I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

_____
Edward Crossland


I am Mr. Crossland's attorney. I have carefully reviewed the statement of facts with him.

_____
William C. Brennan, Esq.
Counsel for Edward Crossland